**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MFB FERTILITY INC., <br> a Colorado corporation, <br> <br> Plaintiff, <br> <br> v. <br> <br> EASY HEALTHCARE CORPORATION, <br> an Illinois Corporation, <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 1:20-cv-07833 <br> <br> Honorable John F. Kness <br> <br> Magistrate Judge M. David Weisman |

**DEFENDANT EASY HEALTHCARE CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SANCTIONS UNDER
<u>RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

Pursuant to Federal Rule of Civil Procedure 11, Defendant Easy Healthcare Corporation ("Easy Healthcare" or "Defendant"), by and through its undersigned counsel, respectfully moves this Court to award sanctions against counsel for Plaintiff MFB Fertility, Inc. ("MFB") and/or against MFB.

## I.     INTRODUCTION

This is a rare but clear instance where Rule 11 sanctions are warranted. MFB filed its Complaint (the "Complaint" or "Compl.") for the improper purpose of preventing a potential competitor from entering the market just as the noncompetition obligations under the Parties' Exclusive Distribution Agreement ("Distribution Agreement") were expiring. The operative factual allegations in the Complaint lack evidentiary support—and are, indeed, knowingly false. The Seventh Circuit has admonished litigants against using the great power and machinery of the federal courts in such an abusive manner, and the Court should order MFB's counsel to pay all of Easy Healthcare's fees and costs incurred in defending this meritless and improper litigation.

The false allegations in the Complaint, which purport to form the very basis of MFB's claims, include the following:

- Defendant "continued to maintain listings on Amazon of a Competing Product" (Compl. ¶ 38 (Dkt. No. 1)). MFB's counsel knows that the now-removed Amazon listings were defunct listings *for an MFB-made product* and there is no evidence supporting this false allegation.

- Defendant "purposely maintained these Amazon listings so as to misrepresent that it had PdG products to sell" (*Id.* ¶ 39). MFB's counsel knows that the listings were simply defunct listings for an MFB-made product and that Easy Healthcare removed the listings at MFB's request.

- Defendant "had maintained its Amazon listings in a manner confusingly similar to the MFB listings" (*Id.* ¶ 41). MFB's counsel knows that the listings were not "confusingly similar" to the MFB listings—*they were listings for the MFB-made product Easy Healthcare sold pursuant to the Distribution Agreement*. There is no evidence to the contrary.

- Defendant "also continued to maintain and engage in paid advertising for listings related to PdG tests on Amazon.com, Walmart.com, Easy@Home website and elsewhere" and

"maintained and updated these listings at least as late as November 2020" (*Id*. ¶ 43). This is purely false and invented from whole cloth. Easy Healthcare has never paid to advertise any PdG tests other than MFB's, and MFB's counsel has no evidence supporting this falsehood.

- "Easy Healthcare's Amazon Listings Misrepresent That It Can Sell a PdG Test That is 'FDA Approved'" (*Id.* at p. 21). The Amazon listings never stated that any PdG test was "FDA Approved," and this was clear from the public listings. Further, Easy Healthcare ran out of MFB inventory in early 2019, and the public listings have stated that the product was "unavailable" since then, not that it was being sold.

- "Following MFB's achievement of receiving its own FDA clearance for PdG tests in March 2020, Easy Healthcare <u>changed its Amazon listings</u> to market Easy Healthcare branded tests as 'FDA Cleared' . . ." (*Id.* ¶ 46 (emphasis in original)). This allegation is baseless—Easy Healthcare listed the MFB product it sold as "FDA Cleared" ***as of 2019*** and the listings were never changed to reflect any FDA status MFB achieved in 2020.

- "Easy Healthcare's Wrongful Manufacture of PdG Products" (*Id.* at p. 21). Easy Healthcare is not a manufacturer and has never manufactured a PdG product. This is evident from the FDA's publicly-available Establishment Registration & Device Listing Search Database, which lists Easy Healthcare as only a "Repackager/Relabeler," not a manufacturer.

- "Easy Healthcare's product development efforts of PdG Products led to the actual testing in 2020 of Easy Healthcare branded PdG tests" (*Id.* ¶ 49). This is false—Easy Healthcare has never engaged in any "product development efforts" for competing PdG tests, and MFB has no evidence supporting its allegation.

- "Easy Healthcare's Instructions for use . . . essentially mirror those provided by MFB to Easy Healthcare" (*Id.* ¶ 50). This appears to relate to instructions sent with the few *free* PdG samples Easy Healthcare sent on behalf of another manufacturer to a small group of users in 2020. This does not violate the Distribution Agreement and, as MFB is well aware, the instructions were not "provided by MFB," but were created and finalized by Easy Healthcare.

- Defendant "wrongfully utilized MFB's confidential, proprietary and trade secret information for the purpose of manufacturing a Competing Product for sale" (*Id.* ¶ 60). Easy Healthcare has not manufactured a competing product for sale, much less used any MFB confidential/proprietary information or trade secrets to do so. MFB has absolutely no evidence supporting this false allegation, as no such evidence exists.

- "Dr. Beckley . . . assisted Easy Healthcare with configuring its Easy App so that it could accurately read PdG tests supplied by MFB . . . along with the LH tests . . . sold by Easy Healthcare. Easy Healthcare incorporated the confidential and proprietary information provided by MFB into the Easy App" (*Id.* ¶ 53). As any reasonable investigation would have

2

309013489 v2

- revealed, Easy Healthcare *incorporated no MFB information at all* into the Easy App, much less any purported confidential or proprietary information. MFB included this false allegation to support MFB's extortionary demand that Defendant be enjoined from using its own app.

- Finally, MFB contends that it conveyed trade secrets to Easy Healthcare, but none of the information MFB gave to Easy Healthcare (as a mere distributor) could conceivably be considered a trade secret. Indeed, most of the information is publicly available. Further, MFB claims it shared "[t]he dry powder dilution formula for the test calibration" with Easy Healthcare (*Id.* ¶ 33). As MFB knows, and as its counsel should have known after conducting a reasonable investigation, MFB never shared this formula with Defendant.

Not only do these allegations lack any evidentiary support, they are knowingly false and were interposed for the improper purpose of preventing a potential competitor from entering the market.

From just before Thanksgiving 2020 until New Year's Eve, MFB's counsel made escalating threats (including threatening to sue Defendant's CEO individually for fraud or conversion) and demands, while dangling the possibility of relief from the onslaught if Easy Healthcare agreed to extend its noncompetition obligations under the Distribution Agreement beyond January 15, 2021. Then, almost immediately after filing the baseless Complaint, MFB filed a motion for expedited discovery—hoping to fish for some evidentiary support for its claims.

As required under Rule 11, on January 14, 2021, Defendant's counsel sent MFB's counsel a letter setting forth the substance of this motion and requesting that he withdraw the wrongfully-filed Complaint within 21 days. (Rule 11 Safe Harbor Letter attached as Exhibit 1.) In response, MFB's counsel: (a) refused to withdraw the knowingly false statements or provide any reasonable evidentiary support for them; (b) wrongly argued that the Complaint could not have been filed for an improper purpose if Defendant had no current plan to compete; and (c) suggested that the Complaint would only be withdrawn if Defendant submitted to a three-year noncompetition agreement and paid all of MFB's attorneys' fees incurred in this litigation (among other demands). (Response to Rule 11 Safe Harbor Letter attached as Exhibit 2.) Then, incredibly, counsel doubled

3

down by filing a Motion for Preliminary Injunction that repeated each of the above false statements verbatim.[1]

## II. FACTUAL BACKGROUND

### A. The Parties' Distribution Agreement

Easy Healthcare is a well-established online retailer of pregnancy and fertility-related products, and distributes products (including ovulation testing products) from a variety of manufacturers. It does not manufacture any products itself. Rather, it "white labels"—*i.e.*, applies its own brand and label to—products manufactured by others. Easy Healthcare's status as a "Repackager/Relabeler," rather than a manufacturer, is a matter of public record.[2]

Easy Healthcare developed an ovulation-related mobile application (the "Easy App") in early 2017. The Easy App educates women about fertility issues, assists them in tracking their ovulation cycles and basal body temperatures, interprets test results for fertility-related products sold by Easy Healthcare and others (the application is an open platform that allows users to upload any brand of fertility test and input data related thereto), and directs users to relevant products sold by Easy Healthcare. In March 2017, Easy Healthcare informed MFB that it was launching the app and the parties exchanged a handful of emails about it. (MFB has falsely alleged that Easy Healthcare used some MFB confidential information "to advance the development" of the app, but has refused to identify any such information.)

---

[1] When MFB's counsel alleged in the Complaint that Defendant continued to maintain Amazon listings for the PdG products, only one of the two listings had been removed (as set forth below and as counsel was made aware at the time, Amazon was having issues removing the other). By January 21, 2021, both listings had been removed. Nevertheless, on February 2, 2021, MFB's counsel filed the Motion for Preliminary Injunction falsely alleging that Defendant "continues to violate the [now expired] non-compete by, among other things, maintaining Amazon listings that misrepresent that it still has PdG products to sell." (Dkt. No. 23, pp. 4, 28.)

[2] As a matter of law, businesses involved in the production and distribution of medical devices must register with the FDA and specify the particular activity in which they are engaged for each device. Title 21 CFR Part 807.20. For every product for which Easy Healthcare has submitted a "Device Registration and Listing" with the FDA, it is listed solely as a "Repackager/Relabeler" and not a manufacturer. This information is easily found on the FDA's website.

Also in early 2017, MFB approached Easy Healthcare about distributing MFB's progesterone ("PdG") test kit (the "MFB-made PdG Kit"). On March 15, 2017, Easy Healthcare and MFB entered into the Distribution Agreement and Easy Healthcare agreed to distribute MFB-made PdG Kits. The Distribution Agreement contained a non-competition provision that prohibited Easy Healthcare from manufacturing or selling a competing PdG kit until January 15, 2021 (three years after the Distribution Agreement's term ended).

### B. Easy Healthcare distributed the MFB-made PdG Kits for a limited time and has sold no PdG kits of any type since early 2019

For a limited time, Easy Healthcare distributed the MFB-made PdG Kits by posting links to the product on Amazon (among other sales efforts). Easy Healthcare created and finalized the instructions for the MFB-made PdG Kits and sold the kits under its *Easy@Home* label and brand. During the period of distribution, the revenue from this product constituted less than 0.3% of Easy Healthcare's overall revenues.

Because Easy Healthcare repackaged and distributed the MFB-made PdG Kits, it was required to submit an "Establishment Registration & Device Listing" for the device with the FDA. Easy Healthcare registered solely as a "Repackager/Relabeler" of this device. Readily-accessible FDA records confirm that Easy Healthcare *has never registered as a __manufacturer__ of this or any other progesterone test*, as would be required if it manufactured any such products.

The MFB-made PdG Kits that Easy Healthcare distributed are Class I devices exempt from FDA premarket notification procedures. Therefore, the initial Amazon listing for the MFB-made PdG Kits—posted in 2017—stated that the kits were "FDA Registered." On one of the Amazon listings, Easy Healthcare changed this language to "FDA Cleared" **in early 2019**. Easy Healthcare never made any change to either Amazon listing after April 9, 2019. (Amazon listing information page stating latest "Status Changed Date" for either listing was April 9, 2019, attached as Exhibit

5

3.) Easy Healthcare never changed either listing to reflect any FDA status MFB achieved in 2020 and never listed any PdG test as "FDA Approved." (MFB has falsely alleged that Easy Healthcare changed these Amazon listings in 2020 to state "FDA Approved" in response to a new FDA status MFB secured in 2020. This is verifiably false.)

As a distributor of the MFB-made PdG Kits, Easy Healthcare did not request or receive from MFB any confidential or proprietary information or trade secrets regarding the kits. Rather, the information MFB shared with Easy Healthcare was sent via email and consisted almost entirely of publicly available information. Since November 2020, MFB has consistently failed to identify any particular confidential information or trade secrets it provided to Easy Healthcare. Worse, MFB has falsely alleged that Easy Healthcare somehow incorporated some wholly-unidentified confidential information into the Easy App - the core function of which was developed before the Distribution Agreement was even executed.

The Distribution Agreement's term ended in January 2018. Easy Healthcare continued to sell its remaining inventory of the MFB-made PdG Kits until MFB could no longer supply the MFB-made PdG Kits to Easy Healthcare because of MFB's own quality control issues. Easy Healthcare sold its last MFB product in early 2019.[3] Since that time, Easy Healthcare's Amazon listings for the product have stated that it is "unavailable." (MFB falsely alleged that Defendant "maintained these Amazon listings . . . to misrepresent that it had PdG products to sell . . . .")

Easy Healthcare has not sold any MFB-made PdG Kits since early 2019, and has not sold or manufactured any competing PdG kits at any time. Indeed, Easy Healthcare's only involvement with PdG kits other than MFB's was when it sent free samples of PdG kits to existing and prospective customers on behalf of another manufacturer in November 2020. Easy Healthcare

---

[3] Depending on the listing, Easy Healthcare's inventory of the MFB-made PdG Kits sold out either in or about February, 2019 or in or about April, 2019.

routinely receives such free samples and sends them to customers for evaluation. (MFB has falsely alleged that Defendant *developed* these kits itself using MFB trade secrets.) The free PdG samples included a "not for sale" designation and instructions similar to those Easy Healthcare created when it distributed the MFB-made PdG Kits. (MFB has falsely alleged that it solely drafted the instructions.)

On January 15, 2021, the noncompetition agreement between Easy Healthcare and MFB expired. Easy Healthcare is now free to distribute PdG kits for another seller, should it so choose.

> **C.      Nearly three years after the Parties' relationship ended, MFB resurfaced with extra-contractual demands and threatened meritless litigation for the purpose of keeping Easy Healthcare from lawfully competing with MFB**

MFB resurfaced nearly three years after the Parties' relationship ended (and less than two months before Easy Healthcare's non-compete expired). On November 20, 2020, Easy Healthcare received a Demand and Cease and Desist Letter (the "Demand Letter") by email from MFB's counsel stating that MFB had "reason to believe that Easy Healthcare is planning to launch a Competing Product before" the expiration of the non-compete period. (November 20, 2020 letter attached as Exhibit 4.) Also without any basis, MFB's counsel accused Easy Healthcare of "wrongfully utilizing MFB's confidential, proprietary and trade secret information for the purpose of manufacturing and selling a Competing Product." (*Id.* at 2.)

On November 23, 2020, Easy Healthcare's counsel responded that she would "revert on substance shortly," but was traveling the week of the Thanksgiving holiday. (November 23, 2020 email chain attached as Exhibit 5.) In response, MFB's counsel threatened to "file an injunction claim this week" [*i.e.*, the week of Thanksgiving] unless Easy Healthcare re-committed to comply with the Distribution Agreement, including the non-compete, and located and "return[ed]" 3-year old emails from his client. (*Id.*)

7

On November 25, 2020, Easy Healthcare's counsel provided a detailed response to the Demand Letter, confirming that Easy Healthcare had not breached the Distribution Agreement and would continue to comply with that agreement. (November 25, 2020 letter attached as Exhibit 6.) She further noted that the only information Easy Healthcare received from MFB was sent through emails, to which MFB has equal access. (*Id.* at 2-3.)

MFB's counsel refused to accept the very representations he had requested, threatened to file a complaint "to restrain Easy Healthcare from selling a competing product," threatened to file a claim against Easy Healthcare's CEO, "Sherry Liu, individually for fraud or conversion," and oddly demanded that Defendant both destroy and preserve MFB's purportedly confidential information in its possession. (November 30, 2020 - December 7, 2020 email chain attached as Exhibit 7.) Easy Healthcare's counsel repeatedly admonished MFB's counsel against filing a lawsuit in violation of the Parties' arbitration agreement, offered to return information if MFB would simply identify "what sensitive information is actually at issue" (none was ever identified), and provided facts demonstrating that there was no basis for MFB's allegations. (*Id.*)

Despite multiple requests for the bases of MFB's claims, MFB's counsel failed to identify any evidence that Defendant violated the Distribution Agreement or engaged in any wrongdoing. In a phone call, MFB's counsel stated that he was relying on **"a feeling" that MFB had**.

### D. Easy Healthcare explained the nature of the Amazon links at issue, and made every effort to remove the defunct links at MFB's request

In addition to his client's "feeling," MFB's counsel repeatedly pointed to defunct Amazon links that Easy Healthcare had created *for the MFB-made PdG Kits* as MFB's primary evidence of Easy Healthcare's wrongdoing. MFB's counsel complained that the defunct Amazon links were for a "competing product" that Easy Healthcare intended to offer. Easy Healthcare explained in detail that the only Amazon links it ever created were for the *MFB-made PdG Kits*, not for a

8

competing product, and that the links at issue have listed the product as "unavailable" since early 2019, when Easy Healthcare ran out of the MFB-made PdG Kits to distribute. MFB's counsel did not dispute the truth of these representations or offer any evidence to the contrary.

Nevertheless, MFB's counsel represented that removing the defunct listings for the MFB-made PdG Kits would "go a long way toward" resolving MFB's concerns. Counsel for MFB originally cited one link that it wanted Easy Healthcare to remove (the "December 9 link"). (December 9, 2020 email (without attachments) attached as Exhibit 8.[4]) Thereafter, counsel for MFB indicated that there was another link that MFB wanted removed (the "December 17 link"). (December 17, 2020 email attached as Exhibit 9.[5])

Despite being under no obligation to do so, Easy Healthcare contacted Amazon immediately upon MFB's first request and asked to have both historical Amazon links removed. Amazon removed the December 9 link on or about December 15, 2020. Due to a glitch on Amazon's part that was out of Easy Healthcare's control, the December 17 link was not removed until January 11, 2021.[6]

On December 18, 2020—nearly two weeks before the Complaint was filed—Easy Healthcare sent MFB a letter that, among other things, informed MFB of Easy Healthcare's efforts to remove the links, including the Amazon glitch that left the December 17 link online. (December 18 letter attached as Exhibit 10.) As of January 21, 2021, both complained-of defunct Amazon links for the MFB-made product had been removed—as counsel for MFB is aware. (Incredibly,

---

[4] https://www.amazon.com/Easy-Home-Progesterone-Registered-Confirmation/dp/B074Q1526S
[5] https://www.amazon.com/dp/B073K4MR7P
[6] In an effort to get the links removed, Easy Healthcare created several "Amazon cases" and escalated the matter multiple times. Amazon initially responded that, "[o]nce you create a product detail page, it will remain in the catalog system for [sic] forever, and we do not have an option to delete the product detail page from the catalog system." Amazon noted, as long as the listing is not searchable and shows as "unavailable," it is an inactive listing. Easy Healthcare continued to pursue the removal of the defunct link anyway, and was ultimately able to convince Amazon to remove it. Amazon noted that it had made a special accommodation here given the circumstances.

counsel filed a Motion for Preliminary Injunction anyway, alleging that exactly the opposite was true. (Dkt. No. 23, pp. 4, 18, 22, 28.)

### E. MFB's counsel made a final demand on Christmas Eve then filed suit on New Year's Eve

Easy Healthcare's December 18, 2020 letter directly and thoroughly addressed what Easy Healthcare believed were MFB's remaining questions and concerns, including the historical Amazon links. (December 18 letter attached as Exhibit 10.) MFB's counsel responded via email on Christmas Eve—again refusing to respond to the substance of Easy Healthcare's correspondence (stating that he would not "respond in full right now"), failing to provide support for any of MFB's claims, and demanding that Easy Healthcare's counsel "agree to return what has been requested or confirm that [she was] refusing to do so. . ." by "3:00 p.m. Monday December 28, 2020"—one business day later. (December 24, 2020 email attached as Exhibit 11.)

While Easy Healthcare was processing MFB's latest unreasonable demand for information MFB refused to identify, on December 31, 2020, MFB's counsel notified Easy Healthcare's counsel via email that MFB would be filing a lawsuit against Easy Healthcare. (December 31, 2020 email attached as Exhibit 12.) MFB filed the lawsuit later that day, New Year's Eve.

## III. LEGAL STANDARD

"When Rule 11 is violated, the district court must impose sanctions against the offending party." *Dubisky v. Owens*, 849 F.2d 1034, 1036 (7th Cir. 1988). Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part, that:

> "[b]y presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . [and] . . . (3) the factual contentions have evidentiary support or, if specifically so

309013489 v2

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b).

When a plaintiff invokes the "great power" of the federal courts in a civil case, "it puts machinery in gear that can be powerful, intimidating, and often expensive." *N. Illinois Telecom, Inc. v. PNC Bank*, N.A., 850 F.3d 880, 883 (7th Cir. 2017). Rule 11 ensures that "those powers and machinery are engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *Id.* at 883-84; *see Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004) (explaining that Rule 11's goal "is to deter abusive litigation practices"); *City of E. St. Louis v. Circuit Court for Twentieth Judicial Circuit, St. Clair County, Ill.*, 986 F.2d 1142, 1144-45 (7th Cir. 1993) (affirming sanctions award for filing a frivolous action for an improper purpose not reasonably based in law or fact and designed to harass). To that end, Rule 11 imposes an affirmative duty on plaintiffs and their counsel to conduct a pre-filing inquiry into the facts and law to support a claim. *City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 306 F.R.D. 175, 180 (N.D. Ill. 2014) (imposing Rule 11 sanctions against counsel for failing to make reasonable factual inquiry) ; *Gonzalez v. Dominick*, 06 C 3961, 2009 WL 4730964, at *3 (N.D. Ill. Dec. 8, 2009) (imposing Rule 11 sanctions on plaintiff for false statements made in connection with the preliminary injunction proceeding).

IV.    ARGUMENT

MFB's counsel has invoked the substantial powers and machinery of this Court against Easy Healthcare without any reasonable evidentiary basis as a means to harass and bully Easy Healthcare into refraining from lawful competition. The operative factual allegations in the Complaint are false—and MFB's counsel was advised of the falsity of most of those allegations prior to filing the Complaint. Despite numerous requests, MFB's counsel never identified any evidence that would support the false allegations (indeed, there is none). The false claims are not

11

merely a result of carelessness by counsel. Rather, they are a calculated effort to abuse the litigation process for the improper purpose of keeping a competitor out of the market. Filing a Complaint on such frivolous and improper grounds is sanctionable.

### A. MFB's counsel had no reasonable factual basis to file the Complaint and made factual allegations with no evidentiary support

There is no evidentiary basis for the Complaint's critical factual allegations, and indeed they are false. Pursuing a lawsuit based on factual contentions lacking evidentiary support is a manifest violation of Rule 11. *See* Fed. R. Civ. P. 11(b)(3); *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 469-71 (7th Cir. 2005) (upholding Rule 11 sanctions award where counsel pursued a lawsuit after learning that the pleading contained false contentions); *Portman v. Andrews*, 249 F.R.D. 279, 282 (N.D. Ill. 2007) (explaining that "[a] court may impose sanctions under Rule 11 if . . . a lawsuit is not well grounded in fact," and that "[t]he inquiry is an objective one: whether the party should have known that his position was groundless") (citing *CUNA Mut. Ins. Co. v. Ofc. & Prof. Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006)).

The operative allegations in the Complaint—that Easy Healthcare has wrongfully manufactured a Competing Product and improperly used MFB's purported trade secret information—are entirely and unambiguously false. However, it is not only these conclusory allegations that are false, but also the more specific factual allegations that purport to support them (as set forth on pages 1-3 herein). MFB has never shared its trade secrets with Easy Healthcare, contrary to its false allegation. Easy Healthcare has never maintained an Amazon listing for a competing PdG product, contrary to MFB's false allegation. MFB never assisted Easy Healthcare in developing Easy Healthcare's mobile application or provided any confidential information for the application, contrary to MFB's false allegations. Easy Healthcare, not MFB, created and finalized the private label instructions that accompanied the MFB-made PdG Kits Easy Healthcare

12

distributed, contrary to MFB's false allegation. Easy Healthcare did not amend its Amazon listing in 2020 to reflect MFB's FDA status (or for any other reason), contrary to MFB's false allegation. Easy Healthcare did not continue to pay for advertising for PdG products after the remaining MFB-made PdG Kits sold out in early 2019, contrary to MFB's false allegation. Easy Healthcare did not maintain Amazon listings stating that a PdG product was available for purchase after its inventory of MFB-made PdG Kits ran out, contrary to MFB's false allegation.

The litany of false allegations in the Complaint are no accident. For many of the allegations, MFB's counsel did not simply fail to conduct a reasonable investigation, but rather ignored publicly-available information and irrefutable evidence provided by Easy Healthcare. Therefore, MFB's counsel *made knowingly false allegations* that were directly contrary to information received or available. MFB has not offered *any evidence* to counter Easy Healthcare's evidence or support MFB's false allegations, despite multiple requests. Indeed, no such evidence exists, and MFB in its response brief will be unable to identify any such evidentiary support.

As discussed above, one of the most glaring examples of MBF's counsel's improper tactics is his inclusion in the Complaint and subsequent filings of blatantly false information about the Amazon links. MFB's counsel was made aware that the Amazon links were defunct, were for the MFB-made PdG Kits (not a competing product), and listed the product as "unavailable" since Easy Healthcare's MFB-made PdG Kit inventory ran out in early 2019. Moreover, as set forth above and as MFB is aware, Easy Healthcare *asked Amazon to remove the defunct links to the MFB-made PdG Kits* at MFB's request prior to MFB filing this lawsuit and on MFB's express representation that the removal of the links would "go a long way toward" addressing MFB's concerns. Nevertheless, MFB included knowingly false allegations about these links in the Complaint. Making these false allegations <u>once</u> constitutes sanctionable conduct under Rule 11.

13

Yet, MFB's counsel repeated the same false allegations in MFB's Motion for Preliminary Injunction - knowing that *both* Amazon links had been removed.

### B. MFB's counsel filed the Complaint to harass Easy Healthcare and keep a potential competitor out of the market

MFB's counsel also violated Rule 11 because the Complaint was filed for the improper purpose of harassing his client's potential competitor and trying to keep Easy Healthcare out of the market. *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001) (explaining that "Rule 11 may be violated when, even if the claims are well based in fact and law, parties or their attorneys bring the action for an improper purpose"). This conclusion is supported by MFB's counsel's conduct and demands leading up to the filing, as well as by the circumstances and timing of that conduct. This action, which was initiated mere weeks before the expiration of Defendant's non-compete obligations, is clearly intended to keep Defendant from lawfully competing with MFB and MFB's counsel should be sanctioned for using the court system for this improper purpose.[7]

Indeed, before Easy Healthcare was even served with the Complaint, MFB's counsel threatened to file a motion for preliminary injunction and wrote that MFB would consider "standing down" to give Easy Healthcare "breathing room" only if it agreed "***to not sell a competing product (after January 15, 2021)…***" (January 6, 2021 email attached as Exhibit 13.) MFB's counsel knew that there was no factual basis for MFB's Complaint, and therefore hoped that improperly invoking the powerful machinery of this Court would convince Easy Healthcare to agree to extend its non-compete in exchange for a reprieve from the harassment. Indeed, in

---

[7] MFB's counsel has responded to this argument as follows: "If your client had no intention of selling a competing product, then how could MFB wrongfully be preventing it from doing so?" The answer is simple: with the expiration of the non-compete, MFB was aware that Defendant could lawfully sell a competing product at any time, and therefore filed the Complaint for the improper purpose of stifling that lawful competition. Whether or when Defendant actually intended to distribute a competing product is entirely irrelevant to understanding MFB's purpose.

response to a Rule 11 "safe harbor" letter, counsel for MFB once again offered to end the harassment only if Easy Healthcare agreed to a ***three-year*** non-compete that is broader than the one the Parties entered into in 2017. (Exhibit 2.)

Further, from the outset, MFB's counsel has taken a bullying and harassing approach to this matter, including issuing unilateral demands on extremely short time-frames and on holidays and threatening to sue Easy Healthcare's CEO, Sherry Liu, in her personal capacity for fraud or conversion without basis. (*E.g.*, Exhibits 5, 7, 11.) Within days of serving the Complaint, MFB's counsel also filed a motion for expedited discovery. (Dkt. No. 6.) This is further evidence that MFB's counsel recognized that he had no evidentiary support for MFB's allegations, and hoped to quickly gather such evidence with a fishing expedition through the records of MFB's potential competitor. The harassment by MFB's counsel, designed to keep a competitor from lawfully entering the market, is precisely the type of improper purpose that Rule 11 is intended to prevent.

The fact that MFB filed the Complaint for an improper purpose, standing alone, is sufficient grounds to impose sanctions upon MFB's counsel. Combined with the knowing falsity of the allegations, the imposition of sanctions is necessary.

### III. CONCLUSION

Rule 11 serves a gatekeeping function to prevent counsel from abusing the great power and machinery of this Court in the very fashion that MFB and its counsel have employed here. Because MFB has brought claims that lack any evidentiary basis in an effort to gain a commercial advantage, the Court should impose sanctions in an amount sufficient to reimburse the fees Defendant has incurred in defending this frivolous litigation and should award such other relief as it deems just and proper.

15

309013489 v2

Dated: February 15, 2021	Respectfully submitted,

                                              By:	/s/ Abram I. Moore

                                                        Abram I. Moore (IL Bar No. 6278871)
                                                        K&L Gates LLP
                                                        70 West Madison, Suite 3300
                                                        Chicago, IL 60602
                                                        (312) 781-6010
                                                        abram.moore@klgates.com

309013489 v2