IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MFB FERTILITY INC., | |
| Plaintiff, | No. 20-cv-07833 |
| v. | Judge John F. Kness |
| EASY HEALTHCARE CORPORATION, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant's motions to dismiss and compel arbitration, to stay discovery, and for sanctions, as well as Plaintiff's motion for a preliminary injunction. For the reasons that follow, Defendant's motion to dismiss and compel arbitration (Dkt. 16) is granted in part; Defendant's motion to stay discovery (Dkt. 19) is dismissed as moot; and Defendant's motion for sanctions (Dkt. 25) is denied. Plaintiff's motion for a preliminary injunction (Dkt. 22) is dismissed as moot. In all other respects, the case is stayed pending resolution of the requested arbitration.

**I.  BACKGROUND**

Plaintiff MFB Fertility ("MFB") researches, develops, and sells in-home tests for fertility tracking purposes. (Dkt. 1 ¶ 5.) MFB first developed a product called Proov, which measures the presence of progesterone metabolites, specifically pregnanediol glucuronide ("PdG"), in urine. (*Id.* ¶¶ 6, 8.) Dr. Amy Beckley, Ph.D.,

MFB's founder, recognized the need for MFB to establish manufacturing and distribution relationships to allow the greatest number of women to use Proov. (*Id.* ¶ 11.) Dr. Beckley approached Defendant, Easy Healthcare Corporation ("Easy Healthcare"), and discussed with Sherry Liu, Easy Healthcare's Chief Executive Officer, the possibility of working together. (*Id.*) MFB and Easy Healthcare (and its Chinese manufacturer, Wondfo Biotech Co., Ltd.) executed confidentiality and/or non-competition agreements to safeguard MFB's confidential, proprietary and trade secret information. (*Id.* ¶ 12.)

On February 22, 2017, Easy Healthcare and MFB entered into a Product Testing and Evaluation Agreement ("the Product Testing Agreement") wherein MFB would provide Easy Healthcare with fifty individually wrapped pregnanediol ("PdG") urine test strips ("PdG Products") "solely for the purpose of internally testing the PdG Products prior to entering into a formal distribution agreement." (Dkt. 1-1, Ex. 2, § 2; Dkt. 1 ¶ 19.) Under the Product Testing Agreement, Easy Healthcare agreed, among other things, not to, and not to allow any third party to, create derivatives or reverse engineer the PdG Products (Dkt. 1-1, Ex. 2, § 3; Dkt. 1 ¶ 20.) The Product Testing Agreement did not have a dispute resolution provision, specifically it did not contain an arbitration agreement. (Dkt. 1-1, Ex. 2)

Three weeks later, on March 15, 2017, Easy Healthcare and MFB entered into an Exclusive Distribution Agreement ("the Distribution Agreement") wherein Easy Healthcare agreed to purchase, sell, and distribute "Ovulation Lateral Flow Immunoassay (LFI) for the detections of Pregnanediol Glucuronide (PdG)

("Progesterone Test") manufactured and private labeled for [Easy Healthcare]." (Dkt. 1-1, Ex. 3, § 1.9.) The Distribution Agreement contains an integration clause that the Distribution Agreement:

> constitutes the entire agreement between the parties in relation to the subject matter of this agreement and supersedes all prior and contemporaneous agreements understandings, courses of dealing and communications, whether written or oral, between the parties with respect to the purchase and sale of the Products and the other matters referred to herein. (*Id.* § 15.1.)

The Distribution Agreement contains a dispute resolution clause that states, in pertinent part:

> <u>Arbitration.</u> Disputes that are not resolved by negotiation or mediation within a reasonable period of time shall be decided by arbitration conducted by a single arbitrator appointed and acting in accordance with the rules of arbitration established by the American Arbitration Association … An Arbitrator's award shall be binding on the parties and non-appealable and shall include among other things, an equitable award of reasonable attorney's fees and costs of suit. (*Id.* § 10.)

The Distribution Agreement does not exclude any types of disputes or relief from the arbitration agreement. (*Id*) Under the Distribution Agreement, Easy Healthcare agreed not to "manufacture and/or sell Competing Products" for three years after January 15, 2018, when the Distribution Agreement expired; and the Parties agreed to maintain the confidentiality of one another's "proprietary, confidential, non-public information" for five years. (*Id*. §§ 7, 8; Dkt. 1 ¶¶ 25–27.)

MFB seeks injunctive relief relating to Easy Healthcare's alleged breach of the Distribution Agreement (Count I) and alleges misappropriation of trade secrets (Count II), breach of the Distribution Agreement (Count III), breach of the Product

3

Testing Agreement (Count IV)[1], and copyright infringement (Count V). Easy Healthcare moves to dismiss this case under Rule 12(b)(3) of the Federal Rules of Civil Procedure and to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 3–4, or alternatively to dismiss under Rule 12(b)(6). Plaintiff moved for a preliminary injunction. (Dkt. 22.) Easy Healthcare moved to stay discovery and for Rule 11 sanctions. (Dkt. 19, 25.)

## II. STANDARD

Under the Federal Arbitration Act ("FAA"), binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that, if an agreement is governed by a valid arbitration provision, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitrations." 9 U.S.C. § 3. If a party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the ground that the FAA requires the arbitration clause of the contract to be enforced. *Id.* (authorizing a motion to stay); *id.* § 4 (authorizing a petition to compel arbitration); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007). When a court determines that the making of the arbitration agreement is not at issue, the FAA requires the court to "make an order

---

[1] Plaintiff lists two separate counts both designated as Count III. The Court refers to the second Count III as Count VI.

directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *Volt Info. Sciences, Inc. v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 474–75 ("[Section 4] confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement.' ").

As the Seventh Circuit has explained, the FAA " 'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' " *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 1983); *see also Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998) ("[O]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration.").

Whether the parties have agreed to arbitrate is a question ordinarily answered by the court rather than by an arbitrator. *Cont'l Cas. Co.*, 417 F.3d at, 730. However, where the parties have agreed to arbitrate the question of arbitrability, a court must defer to the arbitrator, even where the substance of the argument for arbitrability is "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "The incorporation [of the AAA Rules] is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to an arbitrator." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-CV-864, 2020 WL 832365, at *6 (N.D. Ill.

5

Feb. 20, 2020); *see also Corrigan v. Domestic Linen Supply Co.*, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an arbitrator should decide the scope of arbitrability.").

## III. DISCUSSION

MFB and Easy Healthcare agreed that an arbitrator must decide unresolved disputes between them within a reasonable time. (Dkt. 1-1, Ex. 3, § 10.) In agreeing to submit their disputes to arbitration under the AAA Rules, the parties agreed to submit all gateway questions of arbitrability to the arbitrator. (*Id.*) Because the Parties agreed that any questions regarding the arbitrability of MFB's claims must be decided by an arbitrator, under 9 U.S.C. § 4, the Court directs the parties to proceed to arbitration in accordance with the terms of the Distribution Agreement.

MFB acknowledges that most of its suit is based on the Distribution Agreement and thus subject to arbitration, but MFB contends that the Court can grant equitable relief pending arbitration. (Dkt. 31 at 14–15.) MFB also argues that, because the Product Testing Agreement does not contain an arbitration agreement, MFB may litigate to assert its rights under that agreement (specifically as to Count IV alleging breach of the Product Testing Agreement). (Dkt. 31 at 16–17.) According to MFB, the Distribution Agreement is explicitly limited to its subject matter, and the Product Testing Agreement was entered into "for a completely different purpose: solely for the purpose of internally testing the PdG Products prior to entering into a formal distribution agreement." (*Id.*)

6

A court may grant preliminary equitable relief to maintain the status quo notwithstanding the conclusion that the parties' underlying dispute is subject to arbitration. *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 527 (7th Cir. 1996). Such preliminary relief may be essential when there are compelling concerns that a party will be irreparably harmed before the matter can be addressed in arbitration. *See IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 527 (7th Cir. 1996) (citing cases). Preliminary injunctions are "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it," *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) (citations omitted).

A two-step inquiry applies when determining whether such relief is required. *Id.* First, the party seeking the preliminary injunction has the burden of making a threshold showing that: (1) he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If the movant successfully makes this showing, the court must engage in a balancing analysis to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests. *Id.*

Although MFB is correct that the Court *may* grant preliminary equitable relief to maintain the status quo notwithstanding the arbitration agreement, the Court declines to do so. *IDS Life Ins. Co.*, 103 F.3d at 527. Without delving too far into the

7

merits of MFB's motion for preliminary injunction, it is clear it fails at the first instance: MFB will not suffer irreparable harm absent the preliminary injunctive relief it seeks because that relief is available through arbitration. *See* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 37 ("The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief . . . ."); Rule 38 (providing for the appointment of an arbitrator within one day of an emergency application, and setting a schedule for determination of the emergency issue within two days of appointment of an arbitrator.) Moreover, the parties incorporated the AAA Rules into their arbitration agreement and did not limit what disputes would be subject to arbitration. Whether MFB's claims for preliminary injunctive relief are arbitrable is therefore a question the parties agreed to arbitrate. *Henry Schein, Inc.*, 139 S. Ct. at 529 ("[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."). Given the liberal federal policy favoring arbitration agreements, the Court defers the merits of MFB's claims for preliminary injunctive relief to the arbitrator. *Cont'l Cas. Co.*, 417 F.3d at 730.

MFB's argument that the Product Testing Agreement does not contain an arbitration clause and therefore is subject to litigation in this Court fails for similar reasons. Although the Product Testing Agreement does not contain an arbitration agreement, the Distribution Agreement, which the parties executed just three weeks later, contains both an integration clause and an arbitration agreement. (Dkt. 1-1, Ex. 3, §§ 10, 15.1.) MFB argues that the Product Testing Agreement was entered into

for a completely different purpose than the Distribution Agreement and, thus, is neither integrated into the Distribution Agreement nor covered by the arbitration agreement. This is a doubtful contention considering that the parties entered the Product Testing Agreement "solely for the purpose of internally testing the PdG Products *prior to entering into a formal distribution agreement*." (Dkt. 1-1, Ex. 2, § 2) (emphasis added). This language shows there is at least some common purpose between the two agreements.

In any event, whether disputes arising from the Product Testing Agreement are subject to the subsequent Distribution Agreement (which seems likely) is again a question of arbitrability to be decided in arbitration. *Henry Schein, Inc.*, 139 S. Ct. at 529. And because the Distribution Agreement provides for arbitration of most, if not all, the issues between the parties, any doubts concerning the scope of the arbitration clause should be resolved in favor of arbitration. *Miller*, 139 F.3d at 1136.

All the claims in MFB's complaint are subject to arbitration, or at least subject to having an arbitrator determine whether the claims are arbitrable. Accordingly, the Court directs the parties to proceed to arbitration in accordance with the terms of the Distribution Agreement under 9 U.S.C. § 4. Given this ruling, the Court dismisses as moot and without prejudice the motion to stay discovery and the motion for preliminary injunction.

## IV. MOTION FOR SANCTIONS UNDER RULE 11

Easy Healthcare contends that Rule 11 sanctions are warranted because MFB filed its complaint with "knowingly false" allegations and for "the improper purpose

9

of preventing a potential competitor from entering the market just as the noncompetition obligations under the Distribution Agreement were expiring." (Dkt. 26 at 1.) Easy Healthcare also contends allegations in MFB's motion for preliminary injunction are untrue. (Dkt. 26 at 10 (citing Dkt. 23 at 4, 18, 22, 28).) On January 14, 2021, Easy Healthcare sent MFB a letter setting forth the substance of its Rule 11 motion and requesting withdraw of the complaint within 21 days, but MFB refused to do so. Easy Healthcare suggests that it has presented a *prima facie* case of sanctionable conduct and that MFB has failed to meet its burden to establish objective reasonableness and adequate pre-filing investigation. (Dkt. 41 at 13) (citing *Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2013 WL 500861, at *3 (N.D. Ill. Feb. 11, 2013); *but see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) ("To win on a motion for sanctions, the movant must satisfy the "high burden of showing that Rule 11 sanctions are warranted."). According to Easy Healthcare, even if MFB had conducted a reasonable investigation before filing, it should have voluntarily dismissed the Complaint when it received the Rule 11 "safe harbor" letter. (Dkt. 41 at 14–15) (citing *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) ("[A]n attorney violates Rule 11 in maintaining a claim that is unwarranted by existing law or has no reasonable basis in fact" once it becomes clear the claim has no basis.).

Rule 11 requires attorneys or unrepresented parties to certify that filings are not being presented for any improper purpose, that the legal contentions asserted in the filing are not frivolous, and that factual contentions have or are likely to have

evidentiary support. Fed. R. Civ. P. 11(b). Rule 11's purpose is to deter baseless filings. *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). Whether to impose Rule 11 sanctions is within the sound judgment of the district court. *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). Rule 11 embodies both an objective and a subjective standard, prohibiting both "frivolousness on the objective side" and "bad faith on the subjective side." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 930 (7th Cir. 1989). Whether counsel conducted an adequate pre-filing investigation, and "whether a legal position is far *enough* off the mark to be 'frivolous'," are "fact-bound" and "fact-intensive" questions. *Id.* at 931–34 (emphasis in original).

Because Easy Healthcare has not substantiated that MFB conducted an insufficient pre-suit inquiry or that it filed for an improper purpose, it has failed to establish a *prima facie* case of sanctionable conduct. Easy Healthcare's argument for sanctions—namely that MFB claims were "knowingly false" and were submitted for an improper purpose—consists solely of assertions by counsel in a motion; "[t]hat's neither proof nor evidence." *Kichatay v. Nw. Home Care, Inc.*, 327 F.R.D. 204, 206 (N.D. Ill. 2018); citing *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *Malik v. Holder*, 546 F. App'x 590, 593 (7th Cir. 2013). Easy Healthcare does little to establish the insufficiency of Plaintiff's pre-suit inquiry other than concluding that, "[f]or many of the allegations [in the complaint], MFB's counsel did not simply fail to conduct a reasonable investigation, but rather ignored publicly-available information and irrefutable evidence provided by Easy Healthcare." (Dkt. 26 at 13.) Easy Healthcare does not argue that the complaint has no basis in law. Easy Healthcare's conclusion

11

that the complaint contains false allegations thus fails to establish an insufficient pre-suit inquiry.

Easy Healthcare also asks the Court to infer that MFB filed its complaint for the improper purpose of preventing it from competing with MFB from "MFB's counsel's conduct and demands leading up to the filing, as well as by the circumstances and timing of that conduct," including MFB's refusal to withdraw the complaint after receiving the Rule 11 "safe harbor" letter (*Id.*) But the Court declines to draw that conclusion, particularly where the parties have agreed that the arbitrator may offer the relief that Easy Healthcare seeks. *See* Dkt. 1-1, Ex. 3, § 10 ("An Arbitrator's award . . . shall include . . . reasonable attorney's fees and costs of suit."); *see also* American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 47(d) ("The Award of the arbitrators may include . . . an award of attorney's fees if . . . it is authorized by law or their arbitration agreement.")

Easy Healthcare has not demonstrated any of MFB's filings were far enough off the mark that they were baseless. Rule 11 sanctions, therefore, are unwarranted.

## V. CONCLUSION

For the reasons stated, the Court directs the parties to proceed to arbitration in accordance with the terms of the Distribution Agreement. Accordingly, the case is stayed. The motion to stay discovery and for preliminary injunction are dismissed without prejudice as moot.

12

SO ORDERED in No. 20-cv-07833.

Date: March 29, 2023

_____
JOHN F. KNESS
United States District Judge